Lawrence K. JOHNSON, Appellant
(Defendant Below),

v.

Jerry G. HICKMAN, Appellee
(Plaintiff Below).

No. 02A03–8609–CV–267.

Court of Appeals of Indiana,
Third District.

May 21, 1987.
Rehearing Denied July 8, 1987.

N. Reed Silliman, Lisa T. Hamilton, Baker & Daniels & Shoaff, Fort Wayne, for appellant.

Jeffrey G. Raff, Fort Wayne, for appellee.

STATON, Judge.

The dispute underlying this appeal involves a $19,998.00 commission from a life insurance policy purchased by Kenneth Schlatter. An insurance agent, Jerry Hickman (Hickman), alleged that a bank employee, Lawrence Johnson (Johnson), interfered with a business relationship and interfered with a contract. The trial court agreed, and Johnson asks us to review the judgment of the trial court. The dispositive issue is: after an insurance policy has been issued, does the insured have any contractual right to change the agent of record designation as shown on the business records of the insurer?

Reversed.

## I.

### Standard of Review

The trial court made findings of fact and conclusions of law pursuant to Indiana Rules of Procedure, Trial Rule 52(A). In our capacity as a reviewing court, we will not disturb those findings unless they are clearly erroneous. In making that determination, we do not reweigh evidence or reassess witness credibility. We consider only the evidence and reasonable inferences drawn therefrom that support the trial court's judgment. That judgment will not be altered unless, after a review of the

entire record, we have a firm and definite conviction that a mistake has been made. *Davis v. Eagle Products, Inc.* (1986), 501 N.E.2d 1099, 1102, *reh. den.*

## II.

### *The Relationship*

The evidence supporting the judgment is that Hickman is an insurance agent for United Farm Bureau Insurance Company. That company, through its agent Al Collins, maintained several insurance policies for Schlatter, who owns over 2,000 acres of farmland.

Mr. Collins died in 1982, and United Farm Bureau appointed Hickman to the Schlatter account and designated him as the servicing agent. In February 1983, Hickman informed the Schlatters that he was taking over for Collins, and a review of Schlatter's insurance coverage was conducted. The next contact Hickman made with Schlatter occurred in February 1984.

At that time, Schlatter instructed Hickman to increase his coverage to include silos. Schlatter, aged 62, also expressed an interest in estate planning. He wanted to arrange his affairs so that after his death, his son would be able to take over the farm and his daughters would receive a cash inheritance. Hickman offered to conduct an inventory of Schlatter's extensive holdings, and to estimate the taxes and administrative costs his estate would incur after his death. Hickman suggested that life insurance could provide the cash necessary to achieve Schlatter's estate planning goals. Schlatter then instructed Hickman to gather the necessary information.

On March 15, 1984, Hickman again met with Schlatter. At that meeting, Hickman gave Schlatter an illustration for a $1,000,000.00 policy, but Hickman indicated that $500,000.00 should be adequate for Schlatter's needs. Schlatter then authorized Hickman to begin the underwriting process for a $50,000.00 life insurance policy, the maximum amount of insurance that Schlatter could purchase without submitting to a medical examination. Hickman also recommended that Schlatter consult both an at-torney and a bank trust officer for additional estate planning advice.

Schlatter contacted his local bank officer who referred him to Johnson, a trust representative for the bank at its main office. In that capacity, Johnson does not manage accounts, rather he markets trust services available at the bank. Johnson is a former insurance salesman holding a current Indiana license to offer that service. He testified that he does not solicit insurance, but he does continue to service insurance policies that he sold in the past.

Johnson and Schlatter got together approximately ten days after Schlatter and Hickman agreed on a policy. At that meeting or in others, Johnson learned of the relationship between Hickman and Schlatter, but he agreed to find other policies for Schlatter to consider.

Johnson contacted James Ash, an insurance broker, and requested several premium illustrations on Schlatter's life. Johnson had a copy of the illustration Hickman gave to Schlatter, and Ash was instructed that this was the premium to beat. Ash obtained illustrations from other companies and gave them to Johnson.

One of the illustrations Ash obtained for Johnson was a $1,000,000.00 policy offered by Manhattan Life Insurance Company. Johnson met with Schlatter, and in early April the application process for the Manhattan policy began.

On June 11, 1984, the Manhattan policy was issued to Schlatter. Johnson was listed as the agent of record for that policy which entitled him to receive a $19,998.00 commission from Manhattan; he received it.

After Hickman became aware of what happened between Schlatter and Johnson, he complained to his manager at United Farm Bureau Insurance. The manager, in turn, contacted Mr. Quirk, the head of the bank's trust department. Mr. Quirk was concerned that there might be a conflict between two bank customers, the Schlatters and the United Farm Bureau Insurance Company, so he instructed Johnson to resign as the agent of record for Schlatter's policy.

On August 17, 1984, Johnson sent a letter to James Ash, the insurance broker, resigning as the agent of record. This letter also provided that Mr. Schlatter should designate a new agent of record. Johnson then told Mr. Quirk that the problem was resolved.

Mr. Quirk sent a copy of Johnson's resignation to United Farm Bureau thinking that the controversy would subside. Unbeknownst to Quirk, Johnson also contacted Schlatter's wife who, in turn, contacted her husband. At his instructions, Mrs. Schlatter wrote a letter to James Ash dated August 17, 1984, appointing John Hettwer, a person they had never met, as the agent of record for the Manhattan policy. Hettwer admitted that he had done nothing to earn the commission, and he also admitted that after being named agent of record he took Johnson on two trips to Florida.

After learning that Johnson had resigned as Schlatter's agent of record, on August 20, 1984, Hickman contacted Schlatter so that he would be named as the agent of record. Schlatter went ahead and signed a letter to that effect which Hickman then delivered to James Ash.

On the same day that Schlatter signed the Hickman letter, he also wrote a letter to Ash revoking it. He took that action after talking to Johnson.

All during this time, Johnson and Ash were in frequent telephone contact. Johnson told Ash that he was going to return the commission for Schlatter's policy, and that it should go to Hettwer. The change in the agent of record designation was only done within the Ash brokerage, and the Manhattan Life Insurance Company was never notified. According to Manhattan's records, Johnson remained the agent of record. Consequently, Johnson was eligible to receive renewal premiums on the Schlatter policy, and in September 1985, he received a renewal commission of approximately $13,000.00.

At trial, there was evidence that Johnson told Mr. and Mrs. Schlatter that he did not receive any commission. Similarly, Mr. Quirk was also unaware that Johnson re-mained the agent of record for the Schlatter policy.

The trial court concluded that Johnson intentionally interfered with the prospective advantage which Hickman enjoyed with Schlatter and intentionally induced Schlatter to breach the agency designation of Hickman upon the contract of insurance on Schlatter's life. We must reverse the trial court, however, because its conclusion is contrary to law.

### III.

### *Intentional Interference with a Contract*

■ In *Biggs v. Marsh* (1983), Ind.App., 446 N.E.2d 977, 983, *trans. den.*, the elements for tortious interference with a contract were set down as follows:

(1) existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach.

■ In the instant case, Hickman cannot predicate his recovery on the above theory because there never was a valid and enforceable contract to pay him a commission. It is undisputed that Manhattan Insurance Company was contractually obligated to pay a commission to the person who sold Schlatter's policy, and that person was Johnson.

■ The legal question presented is whether Schlatter, the insured, had the power to change the agent of record designation, after the policy was issued, to cause the commission to be paid to someone else.

This is a question of first impression in Indiana, so we will look to what other states have done for guidance. Although caselaw on this issue is scant, there are a few reported cases dealing with disputes between agents over insurance commissions. In Kentucky, the supreme court rejected a *quantum meruit* approach, and held that the agent who submits everything required by the insurer is entitled to the commission. *Bishop v. American*

*States Life Ins. Co.* (1982), Ky., 635 S.W.2d 313, 315 (two agents from the same company, without knowledge of each other, worked to sell a one million dollar life insurance policy to the same individual). The Kentucky court observed that in the insurance trade, every agent who solicits business assumes the risk of being able to persuade the prospective customer to deal with him. Also, the insurance company must deal with the agent selected by the insured, when insurance is purchased. *Id.*

In New York, the Supreme Court of Nassau County held that the insurance company was not required to conduct an inquiry why one agent as opposed to another was designated as the "writing agent" and entitled to receive commissions. It was the duty of the insurance company to comply with the wishes of its insured or refuse to write the insurance policy. *Hoffman v. Hagedorn & Co.* (1979), 100 Misc.2d 779, 420 N.Y.S.2d 75, 76. Both *Bishop* and *Hoffman* refer to an earlier New York case where, for political reasons, someone other than the plaintiff was named as the agent of record the day before the policy was issued. *Clinchy v. Grandview Dairy* (1940), 283 N.Y. 39, 27 N.E.2d 425, 426.

The above cases stand for the proposition that the insured is able to designate anyone as the agent of record for purposes of receiving a commission before the policy is issued. That precise point of law, however, is not at issue here. In the instant case, it is undisputed that Johnson was the agent of record for Schlatter's policy, and, if we apply the reasoning from Kentucky and New York, Manhattan dealt with the salesperson selected by Schlatter. This reasoning is not dispositive, however, and we must also explore Schlatter's ability to change the agent of record designation after the policy was issued.

When Schlatter's application for insurance was approved by Manhattan, its duties were fixed by the contracts governing the transaction. Manhattan was obligated to do two things: provide insurance coverage for the policy period and to pay a commission for the sale of that policy. These were separate contracts.

The focus in the instant case is on the agency contract between Manhattan, the principal, and Johnson, its agent, for payment of a commission. 43 Am.Jur.2d, Insurance, § 110 (the general rule is that an insurance agent in making out an application for insurance acts as the agent for the insurer). Manhattan's acceptance of Schlatter's application for insurance coverage was a condition precedent for the agency contract obligating Manhattan to pay a commission. At that point, the agent has done all that was necessary to perform under the contract, and the insurer became bound to pay a commission for the sale of its policy. Schlatter, the insured, is not a party to this contract which is between Manhattan and its agent.

It is well known that one who is not a party to a contract has no power to enforce it, *Nahmias Realty, Inc. v. Cohen* (1985), Ind.App., 484 N.E.2d 617, 623, *trans. den.*, and similarly, one who is not a party to a contract has no power to modify it. When this principle of law is applied to the instant situation, Johnson was the agent who submitted Schlatter's application and was the agent of record at the time the policy was issued. It follows that he is the one entitled to receive the commission for the period of insurance coverage Schlatter purchased.

We agree with those states that hold that an insurance company must deal with the person selected by the insured, and that principle is consistent with our decision today. Schlatter is free to name any licensed insurance salesman to presently service his policy and to name who will be the agent of record for any future insurance coverage. While Schlatter remains free to choose who will receive future commissions, he is not able to affect the payment of a commission already earned and fixed by another contract. Thus, when Hickman went to Schlatter asking to be appointed as the new agent of record so that he would receive the seller's commission, Schlatter had no contractual right or power to effect a change; therefore, no contract was formed between Hickman and Manhattan.

Hickman cannot persuasively argue that the letter Schlatter signed entitled him to future commissions for the renewal of the Schlatter policy because that letter also failed to create an enforceable contract. Since Schlatter was free to choose any salesman for future insurance purchases, he could and did revoke Hickman's appointment without liability. Therefore, an enforceable contract never existed. Indiana law is clear that where there is no enforceable contract, an action for tortious interference with a contract cannot be maintained. *Stanley v. Kelley* (1981), Ind.App., 422 N.E.2d 663, 667, *trans. den.*

Our conclusion is that Hickman is not entitled to recover for tortious interference of a contract because a necessary element of that cause of action is not present. Hickman has not established the existence of a contract, and his failure to do that is fatal to his claim.

### IV.

#### *Interference with a Business Relationship*

Hickman's alternate theory of recovery was tortious interference with a business relationship. This theory does not require the existence of a valid contract, but it is critical that the defendant acted illegally in achieving his end. *Biggs, supra,* 446 N.E.2d at 983.

We note that according to Manhattan's records, Johnson was the only agent of record ever listed on the Schlatter account. Johnson or Schlatter never notified Manhattan that they wished to change agent designation, and Johnson arranged with Ash so that his "resignation" would not be reported to Manhattan. The trial court found that Johnson's "resignation" was only intended to placate his superiors at the bank and that Johnson not only received a seller's commission but a renewal commission as well. The fact that he later gave the money he received for selling Schlatter's policy to Ash so that it would go to Hettwer (who favored Johnson with in-kind

gifts) was purely a voluntary act which had no legal effect on his agency agreement with Manhattan.[1]

 Although Johnson deceived his bank supervisors, he was under no legal obligation to step down as Schlatter's agent of record. While we most heartily do not condone Johnson's actions, we do not conclude that they were illegal. Consequently, Hickman is not entitled to recover under a theory of interference with a business relationship.

The trial court erred by awarding a judgment to Hickman, and that judgment is reversed.

HOFFMAN and MILLER, JJ., concur.

---

**1.** Even though Johnson gave his commission away, in this opinion we do not reach the question of whether or not the receipt of his commission should be treated as income and reported for tax purposes.