The LUTHERAN HOSPITAL OF FORT WAYNE, INC., et al., Appellant–Defendant Below,

v.

Jane DOE, M.D., Appellee–Plaintiff Below.

No. 02A03–9306–CV–194.

Court of Appeals of Indiana, Third District.

Sept. 8, 1994.

Transfer Denied Dec. 8, 1994.

Jim A. O'Neal, Michael A. Wilkins, Ice Miller Donadio & Ryan, Indianapolis, for appellant.

Michael C. Kendall, Kendall Law Office, Indianapolis, for appellee.

STATON, Judge.

In this civil rights action, appellant Lutheran Hospital of Fort Wayne ("Lutheran") presents seven issues for our review, only two of which we must address. We restate those issues as follows:

   I.  Whether the trial court erred in denying Lutheran's motion for summary judgment on Dr. Chun's 42 U.S.C. § 1981 claim.

  II.  Whether the directed verdict entered by the trial court denying the existence of a contractual relationship between Dr. Chun and Lutheran precludes recovery under 42 U.S.C. § 1981.

Appellee Bonnie Chun, M.D. ("Dr. Chun")[1] presents one issue on cross-appeal: whether the trial court erred in entering judgment on the evidence in favor of individual defendant Dr. Acker on Dr. Chun's wrongful interference claim.[2]

We reverse in part, affirm in part and remand.

The facts most favorable to the verdict reveal that Dr. Chun, a 65 year old native of Korea, is a licensed physician engaged in the general practice of medicine in Fort Wayne. In the mid–1980s, she applied for family practice and psychiatry staff privileges at Lutheran, at which time she was denied fam-

---

1. Dr. Chun submits that she filed this action under the name Jane Doe in order to fulfill her statutory duty to mitigate damages during the pendency of this action. However, because the parties referred to the Appellant as Dr. Chun at oral argument and throughout their briefs, we will refer to her as Dr. Chun in this opinion.

2. This court heard oral argument in this case on June 14, 1994.

ily practice privileges but granted psychiatry privileges. Thereafter she was reprimanded on several occasions for allegedly stepping outside the bounds of her psychiatry privileges. These allegations, as well as an allegation of mistreating a patient, eventually led to the summary suspension of all of her privileges at Lutheran.

After her suspension, Dr. Chun brought this action against Lutheran, alleging violations of her federal civil rights[3] and state law claims of wrongful interference with contractual relationships. Lutheran filed a motion for summary judgment, which was denied. A two-week jury trial ensued, resulting in the following verdict: 1) in favor of Dr. Chun for Lutheran's violations of Dr. Chun's civil rights under 42 U.S.C. § 1981, damages in the amount of $750,000.00; 2) in favor of Lutheran and against Dr. Chun on Dr. Chun's claim for conspiracy to violate her civil rights under 42 U.S.C. § 1985(3); and 3) in favor of Dr. Chun regarding only her individual claims against Drs. Scheeringa and Acker for interference with Dr. Chun's rela-

tionships with her patients, damages in the amount of $250,000.00.

Pursuant to Ind.Trial Rule 50(A)(6), the trial court *sua sponte* entered judgment on the evidence in favor of Drs. Scheeringa and Acker, overturning the jury's verdict on count three as contrary to the law and evidence. Lutheran appeals the jury's verdict in favor of Dr. Chun; Dr. Chun appeals the trial court's judgment on the evidence in favor of individual defendant Dr. Acker.[4]

## I.

### *Denial of Summary Judgment*

Prior to trial, Lutheran filed a motion for summary judgment alleging that Dr. Chun's claim under 42 U.S.C. § 1981 failed as a matter of law because § 1981 does not protect private individuals from discriminatory termination or discrimination in terms and conditions of employment. The trial court denied this motion and Lutheran now appeals.[5]

3. Dr. Chun's complaint alleged that she was denied equal protection and due process in violation of her constitutional rights. The trial court interpreted this allegation under the doctrine of notice pleading as a cause of action under 42 U.S.C. § 1981. Lutheran does not challenge this determination, and for purposes of this appeal, we will treat Dr. Chun's complaint accordingly.

4. Dr. Chun does not challenge the trial court's judgment on the evidence in favor of Dr. Scheeringa; he is therefore not a party to this appeal.

5. Dr. Chun argues that Lutheran has waived the right to appeal this issue on several grounds. First, Dr. Chun contends that Lutheran cannot appeal the denial of a summary judgment motion after a full trial. This argument is wholly without merit. Under the applicable procedural rules, "[d]enial of summary judgment may be challenged by a motion to correct errors after a final judgment or order is entered." Ind.Trial Rule 56(E); *see also Haskell v. Peterson Pontiac GMC Trucks* (1993), Ind.App., 609 N.E.2d 1160, 1163, *reh. denied.* As a result, failure to bring an interlocutory appeal from the denial of summary judgment does not waive appellate review after final judgment is entered.

Next, Dr. Chun contends that Lutheran waived any appeal of Dr. Chun's § 1981 claim by failing to object to the jury instruction given by the court. This argument is equally meritless. Although the relevant jury instruction allowed Dr. Chun to recover for discriminatory termination in spite of the law established in *Patterson, infra,*

Lutheran is not bound by this incorrect statement of the law because its objection was properly raised and preserved by its summary judgment motion. *City of St. Louis v. Praprotnik* (1988), 485 U.S. 112, 120, 108 S.Ct. 915, 922, 99 L.Ed.2d 107 (failure to object to a jury instruction does not render the instruction the "law of the case" for purposes of appealing the inconsistent legal theory raised by a previously denied dispositive motion); *see also Dual Manufacturing & Engineering v. Burris Industries* (1980), 7th Cir., 619 F.2d 660, *cert. denied,* 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90; Wright & Miller, Federal Practice and Procedure: Civil § 2558 at 670, 671.

Finally, we reject Dr. Chun's invitation to expand the invited error doctrine to this case. Dr. Chun argues that invited error applies to this issue because following the denial of its summary judgment motion, Lutheran tendered a jury instruction similar to the one given by the court. However, invited error precludes only subsequent challenges to jury instructions containing the same error previously tendered by the appealing party. *State Farm Fire and Casualty v. Graham* (1991), Ind., 567 N.E.2d 1139. We do not believe this doctrine should be extended to operate as a waiver of inconsistent legal theories raised in previous motions and rejected by the trial court. A party should not be precluded from raising an issue on appeal simply because he chose to proceed at trial "within the narrower borders of the case that the judge has laid down for him." *Irvin Jacobs & Co. v. Fidelity & Deposit Co. of Maryland* (1953), 7th Cir., 202 F.2d 794.

When reviewing the denial of summary judgment, we use the same standard used by the trial court. *Ramon v. Glenroy Construction Co., Inc.* (1993), Ind.App., 609 N.E.2d 1123, 1127, *trans. denied.* Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.*; Ind.Trial Rule 56(C). The movant bears the burden of establishing the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed in a light most favorable to the non-movant. *Ramon, supra.*

Lutheran's appeal of the trial court's denial of summary judgment, relating specifically to Dr. Chun's § 1981 claim, relies on *Patterson v. McLean Credit Union* (1989), 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132. In *Patterson,* the United States Supreme Court applied the plain language of § 1981 to conclude that it prohibited violations of civil rights in *making* and *enforcing* contracts, and not to discriminatory conditions of continuing employment. *Id.* at 176, 109 S.Ct. at 2372.[6] This court expressly adopted *Patterson* in *Perry v. Stitzer, Buick, GMC, Inc.* (1992), Ind.App., 604 N.E.2d 613, *adopted on transfer,* (1994), Ind., 637 N.E.2d 1282, stating that § 1981 protection did not extend " 'to problems that may arise from the conditions of continuing employment.' "

■ Lutheran argues that because the gravamen of Dr. Chun's claim arises from actions taken by Lutheran *after* Dr. Chun was granted psychiatric privileges, her claim necessarily involves conduct arising out of conditions of the parties' employment relationship, and not the making or enforcing of a contract. *Patterson* is therefore controlling, and recovery under § 1981 is unavailable as a matter of law. We agree with this argument to the extent that it addresses discrimination after Dr. Chun was granted psychiatric privileges at Lutheran. The law is clear: at the time Dr. Chun brought her

complaint, § 1981 did not protect private individuals from discrimination in terms and conditions of an employment contract. *Patterson, supra; Perry, supra.* Had Dr. Chun's § 1981 claim alleged this type of discriminatory conduct alone, summary judgment would have been proper.

However, our inquiry does not end here. Dr. Chun argues that her § 1981 action is based on Lutheran's discriminatory interference with Dr. Chun's application for additional privileges with Lutheran, as well as its interference with her potential contracts with patients. Such conduct involves the making of contracts, and is properly actionable under § 1981. Viewing the evidence in the light most favorable to Dr. Chun, whether Lutheran's conduct as to these issues was discriminatory creates genuine issues of material fact precluding judgment as a matter of law. Summary judgment was thus properly denied.

## II.

### *Existence of Contractual Relationship*

■ 42 U.S.C. § 1981 addresses the equal rights of all people "to make and enforce contracts". Accordingly, a valid contractual relationship must exist before § 1981 will provide relief. At the end of Dr. Chun's presentation of evidence, Lutheran moved for a directed verdict, asking the court to determine that Dr. Chun failed to establish the existence of a contractual relationship between Dr. Chun and Lutheran. The trial court entered the following directed verdict:

> Defendant's motion for directed verdicts is now granted on so much of Plaintiff's claims as regard any alleged contractual relationship between Plaintiff and the Defendant, the Lutheran Hospital of Fort Wayne, Inc. . . .

Record, p. 1018. This directed verdict is not challenged on appeal. Lutheran argues that the jury's § 1981 verdict cannot stand because § 1981 requires the making or existence of a contract. We agree that the trial

---

**6.** Although *Patterson* has been expressly overruled by the Civil Rights Act of 1991, it remains controlling for this case, filed prior to the 1991 Act. The Supreme Court recently determined, in the explicit context of 42 U.S.C. § 1981, that the 1991 Act was not to have retroactive application. *Landgraf v. USI Film Products* (1994), —— U.S. ——, 114 S.Ct. 1522, —— L.Ed.2d ——.

court's directed verdict precludes the jury from finding § 1981 liability based on any contractual relationship between Dr. Chun and Lutheran.[7] However, the directed verdict does not address the issue of Lutheran's discriminatory interference with Dr. Chun's formation of contracts with patients.

■ Although this jurisdiction has not addressed a § 1981 claim in this context, the Seventh Circuit Court of Appeals has determined when recovery under such circumstances is permissible. In *Daniels v. Pipefitters Association Local Union No. 597* (1991), 945 F.2d 906, the court upheld a § 1981 jury verdict in favor of a union member whose union hall refused to refer him to prospective employers due to discriminatory animus. In response to the union's argument that § 1981 did not cover discriminatory interference with the right to contract with others, the court stated:

> While it is true that the contract exists between the employer and the employee, and not between the employee and the union, this distinction does not insulate the union from § 1981 liability. Local 597 is not an unrelated third party whose interference with the contract bears an attenuated or haphazard connection to contracting between its members and the employer. On the contrary, Local 597 is the necessary intermediary and conduit connecting job opportunities to job referrals. By discriminating against the plaintiff through a refusal to refer him for jobs, Local 597 intentionally deprived Daniels of the ability to enter into contracts with employers, and this manner of discrimina-

tion falls squarely within the prohibition of § 1981.

*Id.* at 915. We find this language persuasive and conclude that § 1981 liability extends to interference with third party contracts in certain circumstances, when the party practicing discrimination is the "necessary intermediary and conduit" in the formation of the contract. *Id.*

■ At trial, Dr. Chun testified that she lost approximately 24 patient referrals each year due to Lutheran's suspension of her psychiatric privileges and refusal to grant her family practice privileges, causing a loss of approximately $50,000 in annual income. She testified that she obtained these referrals from other physicians practicing at Lutheran. However, Dr. Chun also testified that she had a private practice at which she earned substantial income, of which referrals from Lutheran were only a portion.

This evidence does not indicate that Lutheran exercised substantial control over Dr. Chun's access to patients.[8] Dr. Chun's was not a case in which "no referral meant no job," precluding any opportunity for Dr. Chun to create new contracts with patients. *See Daniels, supra* at 914. Dr. Chun did present evidence from which the jury could infer that had she been allowed to continue at Lutheran, she could have increased the number of patients in her private practice. However, the record is devoid of evidence demonstrating that Lutheran's interference rose to the level of effectively preventing her from practicing her profession. On the contrary, the evidence indicates that Dr. Chun's gross income increased from $177,438.00 to $259,786.00 between 1985 and 1991, after her

7. Dr. Chun argues that the directed verdict only applies to the issue of whether a contractual relationship existed between Lutheran and Dr. Chun when Dr. Chun was suspended, and not to her application for additional family practice privileges. However, the trial court's directed verdict went to the existence of any contractual relationship between the parties. It necessarily follows that this includes any prospective agreement that may have been made upon Dr. Chun's application for additional privileges. If the original granting of psychiatric privileges did not create a contract between the parties as a matter of law, it logically follows that the subsequent granting of family practice privileges would not create a contract either.

8. Dr. Chun analogizes her case with *Vakharia v. Swedish Covenant Hospital* (1991), N.D.Ill., 765 F.Supp. 461, involving an anesthesiologist who brought a § 1981 action against a hospital based on the hospital's discriminatory refusal to refer patients to her. However, *Vakharia* is distinguishable from the case at bar in that the anesthesiologist in *Vakharia* was "able to obtain patients only through assignment by the Hospital and referral by staff surgeons." *Id.* at 472. Evidence presented by Dr. Chun overwhelmingly demonstrates that she had ample access to patients through her independent private practice.

psychiatric privileges at Lutheran were suspended. Record, p. 2499.

We believe that substantially greater control is required before § 1981 liability will be extended to third party contracts. Because we do not find the existence of a protected contractual relationship sufficient to invoke § 1981 liability, the judgment thereon must be reversed.

## III.

### Judgment on the Evidence

Dr. Chun presents one issue on cross-appeal: whether the trial court erred in entering judgment on the evidence in favor of individual defendant Dr. Acker on Dr. Chun's wrongful interference claim.

The facts relevant to Dr. Acker indicate that he was an emergency room physician at Lutheran in early 1985, when Dr. Chun's patient Beulah Mounsey was admitted with severe pulmonary disease and depression. Dr. Chun admitted Mounsey to the psychiatric ward and called specialist Dr. Scheeringa to consult with her on the following day. Dr. Acker disagreed with Dr. Chun's treatment, believing Mounsey's condition warranted immediate attention and admission to the intensive care unit. Dr. Acker called Dr. Scheeringa with his concerns, and Dr. Scheeringa immediately admitted Mounsey to intensive care and intubated her. Mounsey died several days later. Dr. Acker reported what he believed was Dr. Chun's mistreatment of Mounsey to Lutheran, which contributed to Chun's summary suspension.

■ On appeal, we use the same standard of review as the trial court in determining the propriety of a judgment on the evidence. *Dahlin v. Amoco Oil Corp.* (1991), Ind.App., 567 N.E.2d 806, 810, *trans. denied.* When the trial court considers entering judgment on the evidence, it must view the evidence in a light most favorable to the party against whom judgment on the evidence would be entered. Judgment may be entered only where there is no substantial evidence or reasonable inference to be drawn therefrom to support an essential element of the claim. *Id.; Sipes v. Osmose Wood Preserving Co.* (1989), Ind., 546 N.E.2d 1223, 1224.

■ In order for Dr. Chun to recover on wrongful interference with a contractual relationship, she had to prove the following elements: 1) that valid and enforceable contracts existed between Dr. Chun and her patients; 2) that Dr. Acker had knowledge of the existence of those contracts; 3) that Dr. Acker intentionally induced a breach of contract; 4) that Dr. Acker was not justified in his acts or conduct; and 5) that as a proximate result of Dr. Acker's wrongful inducement of a breach of the contract, Dr. Chun sustained damage. *Johnson v. Hickman* (1987), Ind.App., 507 N.E.2d 1014, *trans. denied.* Dr. Chun argues that judgment on the evidence in favor of Dr. Acker is erroneous because the trial evidence supports each of these elements. We disagree.

Dr. Chun alleges that Dr. Acker interfered with her contractual relationships with patients in two ways: 1) by calling Dr. Scheeringa to treat Beulah Mounsey prior to the consultation scheduled by Dr. Chun; and 2) by taking part in the process by which her privileges were suspended and thus interfering with potential contracts with patients.

■ Assuming that the evidence supports the conclusion that Dr. Chun had a valid and enforceable contract with Beulah Mounsey and Dr. Acker knew of the existence of that contract, the record does not support the conclusion that Dr. Acker intentionally induced a breach of that contract. Dr. Chun testified that Mounsey did not want "heroic measures" taken to save her life, and that Mounsey did not want to be treated by a male doctor. Dr. Chun did not write these wishes on Mounsey's medical chart. In fact, despite Mounsey's wishes, Dr. Chun admitted her to the hospital and called Dr. Scheeringa, a male, to treat her pulmonary disease. When Dr. Acker learned from the nursing staff that Mounsey's lung condition was rapidly deteriorating, he called Dr. Scheeringa to inform him. Dr. Chun testified that she instructed the staff to call Dr. Scheeringa if Mounsey's condition became critical. Record, pp. 2876–2877. These undisputed facts indicate that Dr. Acker's sole action in treating Mounsey was just as Dr. Chun had instructed: he called Dr. Scheeringa to inform

him of the patient's critical condition. These facts do not support the inference that Dr. Acker intentionally interfered in Dr. Chun's contract with Mounsey.

■ Dr. Chun's claim that Dr. Acker's involvement in her summary suspension constituted interference in future contractual relationships with patients also fails. It is well established that a cause of action for intentional interference with a contract requires proof of the existence of a valid and enforceable contract. *Johnson, supra* at 1019 (citing *Stanley v. Kelley* (1981), Ind.App., 422 N.E.2d 663, 667, *trans. denied*). Because Dr. Chun's argument is premised on prospective contractual relationships in which no valid and enforceable contract has yet been entered, her cause of action for intentional interference with a contract cannot be maintained.

Dr. Chun's evidence and the reasonable inferences to be drawn therefrom do not support the conclusion that Dr. Acker interfered with Dr. Chun's contractual relationship with Mounsey. Too, Dr. Chun has not presented evidence to demonstrate the existence of contracts with future patients. Because Dr. Chun's claim fails on these essential elements, we conclude that the trial court properly entered judgment on the evidence in favor of Dr. Acker.

We reverse in part, affirm in part and remand with instructions to enter judgment for Lutheran on Count I of Dr. Chun's complaint.

HOFFMAN and NAJAM, JJ., concur.