GRAND PARK SURGICAL CENTER, INC., Plaintiff,

v.

INLAND STEEL COMPANY, a Delaware corporation, Defendant.

No. 95 C 5979.

United States District Court, N.D. Illinois, Eastern Division.

March 28, 1996.

Harold E. Collins, Michael Raymond Collins, Collins & Collins, Chicago, IL, Chandramathi Hanumadass, Collins & Collins, Chicago, IL, for Plaintiff.

Richard C. Robin, Lawrence L. Summers, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*

ASPEN, Chief Judge:

Plaintiff Grand Park Surgical Center brings this two-count complaint premised on diversity jurisdiction against Inland Steel Company, seeking damages for (1) intentional interference with contract and (2) libel and slander. Inland believes that these state law claims are preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and moves to dismiss. For the reasons that follow, the motion to dismiss is granted in part and denied in part. In addition, we order the parties to brief whether this case should be transferred to the Northern District of Indiana under 28 U.S.C. § 1404(a).

### I. Background

Grand Park is an outpatient surgery center located and incorporated in Indiana. Among its patients are Inland employees and retirees, and their dependents, who participate in Inland's health insurance plans. Grand Park alleges that some of these patients, although treated in 1994 and early 1995, have yet to pay for the medical care rendered. Compl. ¶ 6 (listing patients, date

of service, date and amount billed, and remaining balance). The patients had executed assignment of benefits forms directing that payments for each patient's claim be made directly to Grand Park, and the surgery center prepared claims for reimbursement on each patient's behalf. Rather than pay, however, the defendant has completely withheld payment for most of the patients, and in three instances has paid a patient directly.

■ According to the plaintiff, Inland sent letters to patients and non-patients, asserting that "detailed reviews of Grand Park Surgical claims ... indicated substantial overcharging and inappropriate and unnecessary care." Compl. ¶ 12; Pl.'s Resp., Ex. 1.[1] In addition, the letters declared, "Last and most importantly, **DO NOT PAY ANY GRAND PARK SURGICAL BILLS** that may be sent to you." Pl.'s Resp., Ex. 1 (capitalization and emphasis in original); see Compl. ¶ 13. Furthermore, Grand Park alleges, the defendant told physicians, health care providers, and an employees' union that Grand Park substantially overcharged patients and rendered inappropriate and unnecessary care. Compl. ¶ 14. Finally, Inland requested that the Indiana Attorney General's office investigate the alleged wrongdoing. Id. ¶ 16; Pl.'s Resp., Ex. 1.

In the instant suit, Grand Park's complaint asserts two state law causes of action: interference with contractual relationships (Count I), and libel and slander (Count II). Presently before the court is Inland's motion to dismiss the complaint as preempted by ERISA, or in the alternative, for failure to state a claim.

1. Although the complaint refers to a representative letter cited as Exhibit A, the record does not contain exhibits to the complaint; however, we may consider allegations in briefs submitted by the plaintiff in opposition to a motion to dismiss, *Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963–64 (7th Cir.1992), and the plaintiff's response brief does indeed contain a representative letter cited as Exhibit 1.

2. Both parties assume without discussion that, insofar as state law applies in this case, Indiana law governs. As a federal district court in Illinois, we apply Illinois choice of law rules, which

## II. Standard for Reviewing Motions to Dismiss

■ A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir.1995); *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir. 1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take as true the well-pleaded factual allegations of the complaint and view them, as well as reasonable inferences drawn from them, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High Sch. Dist. 230*, 991 F.2d 1316, 1324 (7th Cir.1993) (citing *Ellsworth*, 774 F.2d at 184). In addition, we consider exhibits incorporated into the complaint, *Webster v. New Lenox Sch. Dist. 122*, 917 F.2d 1004, 1005 (7th Cir.1990), as well as factual assertions in the plaintiff's brief, *Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963–64 (7th Cir.1992), as allegations in the complaint.

### III. Discussion[2]

*A. Intentional Interference with Contract (Count I)*

■ Count I can be read to advance three different theories for intentional interference with contractual relations: (1) the defendant failed to pay the assigned benefits to Grand Park; (2) the defendant's interference has prevented Grand Park from collecting the outstanding balances due from patients who have already received treatment; and (3) the defendant's interference has intimidated prospective patients from seeking care at Grand Park and has caused physi-

direct us in this tort action to apply the state with the strongest interest in the case. *Kaczmarek v. Allied Chem. Corp.*, 836 F.2d 1055, 1057–58 (7th Cir.1987). It appears from the allegations that the relevant patients live in Indiana, work at Inland's Merrillville, Indiana facility, and that Grand Park is incorporated and located in Indiana. In addition, the applicable choice of law rules permit parties to reasonably agree to which state's law controls. *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1219 n. 6 (7th Cir.1995). Accordingly, we apply Indiana law to the extent state law governs.

cians to avoid using the surgery center. Compl. ¶¶ 23, 24. As we explain below, the first reading is preempted by ERISA, the third fails to state a claim under Indiana law, but the second survives both preemption and an attack for failure to state a claim.

■ Among other things, ERISA governs employee welfare benefit plans, including plans that provide "medical, surgical, or hospital care" benefits for participants and beneficiaries.[3] 29 U.S.C. § 1002(1)(A). In order to ensure uniform regulation of benefit plans, ERISA § 514(a) declares that ERISA's provisions preempt "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a)[4]; *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, ── U.S. ──, ──, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995). Because ERISA § 502 creates a cause of action for recovery of benefits, 29 U.S.C. § 1132(a), state law is preempted to the extent that a beneficiary or participant relies upon it to recover benefits. *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 127 (7th Cir.1992) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)); *see also Rice v. Panchal*, 65 F.3d 637, 646 n. 10 (7th Cir.1995) (explaining that complete preemption under § 502(a) necessarily entails preemption under § 514(a)).

■ Accordingly, the first possible reading of Grand Park's intentional interference claim—that the defendant must pay the plaintiff medical benefits under the assignments executed by the patients—is preempted as an "effort to use state law, including state common law, to obtain benefits" under the health insurance plans. *Pohl*, 956 F.2d at 127. To the extent that Grand Park seeks to collect benefits pursuant to the assignments, the plaintiff acts as a "beneficiary" under ERISA, *Kennedy v. Connecticut Gen.*

*Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991), and must sue under ERISA § 502(a) for recovery, *Pilot Life Ins. Co.*, 481 U.S. at 52, 107 S.Ct. at 1555–56. At this stage of the litigation, however, we will refrain from *sua sponte* converting the intentional interference claim unto a § 502(a) claim; it is unclear that direct suit on the assignments of benefits is the theory pursued by the plaintiff, and the plaintiff seems to disavow this theory, *see* Pl.'s Resp. at 8–9. We simply hold that, to the extent the complaint purports to state a claim under Indiana law for payment of benefits under the plan, such a claim is preempted.

■ However, the second possible reading of the complaint—that the defendant is interfering with Grand Park's existing contracts with patients who have outstanding balances—survives preemption. Under this reading of the complaint, Grand Park does not seek benefits from Inland at all. Rather, the plaintiff alleges that certain patients have received medical treatment but have failed to pay outstanding balances, Grand Park was pursuing collection attempts in state court, *see* Pl.'s Resp. at 8, and Inland urges the patients not to pay. This theory of recovery does not refer to the health insurance plans. Regardless of whether the medical treatment was covered by Inland's health insurance plan, Grand Park alleges that there exists a contract between the surgery center and its patients, and that Inland declares that employees should not pay the outstanding balances.

Indeed, under this reading of the complaint, the plaintiff does not even seek recovery of the benefits from Inland; Grand Park may recover only damages in the amount caused by Inland's exhortations, not those damages caused by some other reason, and Grand Park will not necessarily recover an amount equal to the benefits covered by the health insurance plans.[5] Finally, we note

---

**3.** Grand Park does not dispute that Inland's health insurance plans fall within ERISA's definition of employee welfare benefit plans.

**4.** Section 514(b) provides for exceptions, not relevant here, to § 514(a)'s preemption.

**5.** The distinctions between recovery of damages caused by intentional interference and recovery of benefits, and between suit against an employer

(who is not acting as the plan fiduciary) and suit against the plans or their fiduciaries, distinguish the instant action from those cases seeking recovery of benefits (or their functional equivalent) and those cases naming the plans or their fiduciaries as defendants. *See Health Cost Controls v. Manetas*, No. 94 C 419, 1995 WL 66383 (N.D.Ill. Feb. 13, 1995); *St. Joseph Hosp. v.*

that Inland is the named defendant, not the health insurance plans themselves, and thus any damages would be paid by Inland rather than the plans.[6] Thus, insofar as this action is premised on the defendant's interference with Grand Park's attempts to collect outstanding balances from the specified patients, the suit does not undermine ERISA's promotion of a uniform body of benefits law, and accordingly survives preemption.

Lastly, the third possible reading of the intentional interference with contract claim—that Inland has caused patients and surgeons to refrain from using the surgery center in the future—does not adequately state a claim. Under Indiana law, tortious interference with a contractual relationship requires: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the contract's existence; (3) the defendant's intentional inducement of breach of the contract; (4) the absence of justification[7]; and (5) damages resulting from the inducement of the breach. *Winkler v. V.G. Reed & Sons*, 638 N.E.2d 1228, 1235 (Ind. 1994). Because the existence of a contract is required for recovery, interference with future doctor-patient contractual relationships, or any future contractual relationship, does not state a claim for intentional interference with a contractual relationship. *See Lutheran Hosp. v. Doe*, 639 N.E.2d 687, 693 (Ind. Ct.App.1994). Accordingly, we dismiss the intentional interference with contract claim insofar as it premises recovery on interference with future contractual relationships.[8]

### B. Libel and Slander (Count II)

In Count II, the plaintiff alleges that Inland committed libel and slander by announcing that the surgery center substantially overcharged patients and provided unnecessary and inappropriate medical treatment. Inland allegedly communicated the accusations to health insurance plan participants, the employees' union, other patients, nonpatients, physicians, and other health care providers. Compl. ¶¶ 13, 14, 26. Because ERISA does not preempt this defamation claim, we deny the defendant's motion to dismiss this count.

Although not explicitly holding that defamation claims escape preemption by ERISA, discussion in *Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), suggests that at least some defamations claims do survive. In explaining that a generally applicable state garnishment procedure could apply to benefits paid to welfare benefit plan participants, the Court described the two types of suits that can be brought against ERISA plans. First, ERISA § 502 provided for actions to enforce a plan participant's rights or to recover benefits due under a plan. *Id.* at 832, 108 S.Ct. at 2186–87. Second, the Court explained, there are "relatively commonplace" "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan," and these types of torts are not preempted by ERISA. *Id.* at 834, 108 S.Ct. at 2187–88.

---

*Bromm*, No. 94 C 4746, 1995 WL 290413 (N.D.Ill. May 10, 1995).

**6.** Unfortunately, the parties have not provided us with the text of the health insurance plans, and we thus do not know how the plans are administered; nor is the complaint entirely clear as to which entity communicated the suggestions that employees refrain from paying Grand Park. *See* Pl.'s Resp., Ex. 1 (letter refers to Centra Benefit Services, is written on "Inland Steel" letterhead, and is signed by "Inland Steel Health Care Benefits").

**7.** In arguing that the intentional interference claim that survives preemption fails to state a claim, Inland maintains that it was justified to induce patients with outstanding balances to refrain from paying Grand Park. However, Inland relies on evidence outside of the complaint, *see* Def.'s Mot., Toth Affidavit, and indeed relies on

evidence heatedly disputed by Grand Park, *see* Pl.'s Resp., Gutierrez Affidavit. In light of these disputed facts, and the several factors relevant to determining the existence of justification, *Winkler*, 638 N.E.2d at 1235, at this stage of the litigation we deny the defendant's motion to dismiss.

**8.** The parties do not address whether Grand Park states a claim for intentional interference with prospective business relationships, *see The Great Escape, Inc. v. Union City Body Co.*, 791 F.2d 532, 542 (7th Cir.1986); *Furno v. Citizens Ins. Co. of Am.*, 590 N.E.2d 1137, 1140 (Ind.Ct.App. 1992), and we thus express no opinion at this time as to whether Grand Park can state such a claim, or whether such a claim would be preempted by ERISA.

 

To support this proposition, the Court cited three examples of cases brought in state court, *id.* at 833 n. 8, 108 S.Ct. at 2187 n. 8, including *Abofreka v. Alston Tobacco Co.*, 288 S.C. 122, 341 S.E.2d 622 (1986). In *Abofreka,* a medical doctor treated two patients covered by their employer's benefit plan, and submitted claims for health insurance benefits on the patients' behalf. *Id.* 341 S.E.2d at 624. The benefits plan issued and posted a memorandum, asking employees to refrain from seeking treatment from the doctor "because his treatment and chargers were 'not within the usual and customary realm of treatment and charges.'" *Id.* Ultimately, the doctor successfully sued the benefits plan and the employer for defamation.

 Because the Court in *Mackey* cited *Abofreka* as an example of a run-of-the-mill tort suit that escapes ERISA preemption, we hold that Grand Park's defamation claim also survives. *See also Pohl v. National Benefits Consultants*, 956 F.2d 126, 128 (7th Cir.1992) (citing *Abofreka* as example of "banana peel"-type case that survives ERISA). Although it seems that a defamation claim could present a challenge to the plan's processing of benefits,[9] in the instant action Grand Park sues Inland, not the plan itself, as the defendant, thus mollifying concerns that the plaintiff is trying an end-run. *Cf. Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 248–49 (5th Cir.1990). In addition, the plaintiff seeks damages for the harm done to its reputation, rather than for unpaid benefits. We thus conclude that Count II is not preempted.[10]

### III. Conclusions

For the reasons set forth above, we grant in part and deny in part the defendant's motion to dismiss. In addition, because it appears that the relevant witnesses and evidence are primarily located in the Northern District of Indiana, and that Indiana law governs this case, we order the parties to file briefs addressing the propriety of transferring this case to that district under 28 U.S.C. § 1404(a) on or before April 11, 1996. We reset the status hearing currently set for April 12, 1996 to April 23, 1996 at 10:00 a.m. It is so ordered.

---

**9.** For example, the doctor in *Abofreka* effectively subjected the accuracy of the plan's determination of benefits coverage—whether the treatment and charges were "usual and customary"—to a trial by jury. Ordinarily, however, a plan administrator's determination of coverage is subject only to review for arbitrariness and capriciousness, *see Allison v. Dugan*, 951 F.2d 828, 832 (7th Cir.1992) (construing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)); the typical plan grants the administrator discretion to make such determinations, and thus the administrator wields fiduciary authority over questions of coverage.

**10.** Additionally, we deny the defendant's motion to dismiss Count II for failure to state a claim under Indiana law. Inland argues only that it communicated the accusations against Grand Park under a qualified privilege, but again relies on evidence outside the complaint and contested by the plaintiff. Because qualified privilege is generally a question for the jury, *Bals v. Verduzco*, 600 N.E.2d 1353, 1357 (Ind.1992), we deny the motion to dismiss at this stage of the litigation.