**Edwin N. LOVING and Joan C. Loving, Appellants (Cross-Claimants, and Counterdefendants),**

v.

**PONDEROSA SYSTEMS, INC., Appellee (Cross-Defendant, and Counterclaimant).**

No. 685S251.

Supreme Court of Indiana.

June 26, 1985.

532

Max W. Hittle, Jr., R. Matthew Neff, Krieg DeBault Alexander & Capehart, Indianapolis, and William H. Andrews, Baker, Barnhart & Andrews, Bloomington, for appellants.

James A. Strain, Stephen W. Lee, Barnes & Thornburg, Indianapolis, for appellee.

## ON CIVIL PETITION TO TRANSFER

PRENTICE, Justice.

This cause is before us upon the petition of Ponderosa (Appellee) to transfer it from the Court of Appeals, First District, that court having determined the issues in favor of the Lovings (Appellants) by decision and opinion published at 444 N.E.2d 896.

Transfer is granted, and said decision and opinion of the Court of Appeals is ordered vacated.

The controversy arises out of a sale and leaseback of improved real estate (premises), the mortgage financing of the premises, the destruction or substantial damage by fire of the improvements thereon, their reconstruction by Ponderosa, and the payment of casualty insurance policy proceeds to Lovings, Ponderosa and Lovings' mortgagee (Bank) jointly.

The Court of Appeals (Judge Neal, dissenting) held that the Bank was entitled to preempt so much of the insurance proceeds as was required to pay the balance owing upon the mortgage debt and that Lovings were entitled to the windfall of such payment of their debt, while Ponderosa was required to restore the improvements without benefit of such insurance proceeds.

In June, 1972, Ponderosa sold and conveyed the premises to Lovings and simultaneously leased them from Lovings for a period of twenty-five years, and Lovings mortgaged them to the Bank to secure a loan of $230,000.00 payable in monthly installments, the final installment being due and payable August 6, 1987. Among other obligations provided by the mortgage, Lovings were required to keep the premises in good repair and insured against loss by fire, to provide the Bank with the insurance policies evidencing such insurance, and to pay the premiums thereon. Additionally, said policies were to contain mortgage clauses satisfactory to the Bank, and the Bank was given the option, in case of loss, to apply the proceeds of the insurance to the payment of the indebtedness, whether or not then due.

The terms of the lease provided that Ponderosa was obligated to repair or replace the improvements if damaged or destroyed and to keep the premises insured against fire loss, at its expense, in an amount equal to the replacement value, less certain components with which we need not be concerned, and that the policies of such insurance would be *"for the benefit of* and payable to [Lovings, Ponderosa and Lovings' mortgagee, if any] as their respective interests may appear." (Emphasis added.)

As a part of the transaction, Lovings and Ponderosa also executed a conditional assignment of rents by the terms of which Ponderosa subordinated its leasehold interest in the premises to the Bank.

The lease further provided:

"(b) In the event of any damage or destruction to improvements on the leased premises during the initial fifteen (15) years of this Lease, the Tenant shall forthwith repair the damages or destroyed improvements, * * * The Landlord, in such event, shall, to the extent and at the times the insurer and the Landlord's mortgagee make the proceeds of the insurance available for such purposes, reimburse the Tenant for the costs of making such repairs, restoration, rebuilding and replacements; * * * To the extent, if any, that the proceeds of insurance made available for such purposes are insufficient to pay the entire costs of making such repairs, restorations, rebuilding and replacements, the Tenant shall bear such costs. * * * "

Ponderosa procured a policy of insurance, as required by the lease, and paid the premiums thereon. Ponderosa was therein named as the party insured, and Lovings

were named as additional parties insured. A "Standard Mortgage Clause" endorsement was also provided, by which the proceeds of the policy, if any accrued, were made payable to the Bank, as its "interest may appear, * * *."

In the seventh year of the lease and mortgage, on December 10, 1979, a fire severely damaged or destroyed the improvements on the premises, and Ponderosa proceeded to have them reconstructed, which reconstruction was completed on June 23, 1980.

Following destruction of the improvements, Ponderosa ceased paying rents to Lovings, and Lovings ceased paying mortgage payments to the Bank. The Bank filed suit upon its note and to foreclose its mortgage on June 6, 1980, naming both Lovings and Ponderosa as parties defendant, and also seeking a declaration of its entitlement to the insurance proceeds, to the extent necessary to pay the balance then owing from Lovings upon the note and mortgage. The Lovings responded with an answer to the Bank's complaint and a cross-claim against Ponderosa, seeking a declaration of rights with respect to the insurance funds, and Ponderosa also answered the Bank's complaint and filed a cross-complaint against Lovings which also sought a declaration of rights with respect to the insurance proceeds.

On June 19, 1980, the insurance company issued its draft in the sum of $472,417.00, payable to the Bank, Lovings and Ponderosa; and on July 29, 1980, the Bank, Lovings and Ponderosa entered into an agreement which, in effect, released $297,417.00 of the insurance to Ponderosa, for application to the costs of reconstruction of the improvements, and the balance of $175,000.00 to the Bank to be held by it pending determination of entitlement thereto among the parties.

On November 28, 1980, Lovings filed a motion for summary judgment, and on February 6, 1981 the Bank also filed a motion for summary judgment. No discovery was had, and, although Lovings filed an affidavit with its motion and "Statement of Facts" and a supplemental affidavit in support of the motion, those documents were largely conclusory rather than factual in nature; and the trial court made its determination upon the facts as hereinbefore related. Partial summary judgment was granted awarding $149,529.01 of the aforementioned $175,000.00 to the Bank in full satisfaction of its note and mortgage, thereby rendering its foreclosure action moot. The balance of $25,470.99 was awarded to Ponderosa for application to the cost of reconstruction, with the excess, if any, to be paid by Ponderosa to Lovings. Other issues relating to certain mechanic's liens filed by other parties and possible damages owing to Lovings by Ponderosa relative to such liens were held in abeyance pending further proceedings.

Ponderosa and Lovings both filed motions to correct errors. The motion of Lovings related to a finding of default by it, an issue with which we need not here be concerned. The motion of Ponderosa charged error in awarding the balance owing upon Lovings' mortgage paid from the insurance proceeds and, alternatively, in not awarding it a judgment against Lovings in an amount equal to the Bank's award and an equitable lien against the premises. The trial court sustained both motions to correct errors on January 26, 1982, ordered the grant of partial summary judgment vacated and proceeded to deny the summary judgment motions of both Lovings and the Bank.

■  Although it filed no motion to dismiss the appeal, Ponderosa, by its brief to the Court of Appeals, urges that the appeal be dismissed, and we agree that it should have been, inasmuch as the denial of a motion for summary judgment is not a final judgment from which an appeal may be taken, because no rights have been thereby foreclosed. An interlocutory appeal may sometimes be had from such denial but only in accordance with Appellate Rule 4(B)(6), as in *Schideler, et al. v. Dwyer* (1981), 275 Ind. 270, 417 N.E.2d 281.

■ The Court of Appeals erroneously held that Lovings were entitled to maintain the appeal under Trial Rule 59(F) and Appellate Rule 4(A), observing that Lovings had been prejudiced by the ruling upon the Ponderosa motion to correct errors. This would be a correct view under *P–M Gas & Wash Co. v. Smith* (1978), 268 Ind. 297, 301, 375 N.E.2d 592, 594, wherein the issue was whether or not a new motion to correct errors was required when relief had been granted upon an earlier motion. However, that case is not applicable here, the distinction being that here there has been no final judgment. The rights of the parties were not, thereby, determined. Rather, they were merely placed in abeyance pending further proceedings—where they would have been had the motions been denied in the first instance.

The appeal is, therefore, subject to dismissal; but inasmuch as briefing has been completed and because of the inordinate delay heretofore occasioned, we elect to determine it upon its merits.

It should be here noted that the Bank has not appealed. However, a determination of its right to apply a portion of the insurance proceeds to the payment of the Lovings' debt is essential to a determination of the issues between Lovings and Ponderosa. Unless the Bank's entitlement to the proceeds, to the extent required to pay the debt, is sustained, the funds are "available" for application to Ponderosa's cost of reconstruction, and the issues between Ponderosa and Lovings are moot.

■ The Court of Appeals, after a lengthy review of principles applicable for the interpretation of contracts, determined that there was no ambiguity or conflicting provisions in the documents to preclude the application of the insurance proceeds to the payment of the balance owing upon Lovings' note, although they were thereby rendered unavailable for payment of the cost of restoration. We agree with this conclusion but shall address Ponderosa's argument to the contrary further along in this opinion.

We next determine that Lovings may not be required to reimburse Ponderosa from their own funds.

From the nature of the transaction and the clear provisions of the documents mentioned, it cannot be questioned that the purpose was to sell, finance and lease the premises and to make Lovings secure in the plan that their purchase money debt to the Bank would be paid from the rents generated by the agreements. The Bank required Lovings to keep the improvements repaired and insured. Lovings passed these obligations along to Ponderosa, and it accepted them. The Bank further required that it have the option of requiring insurance proceeds, if any, applied to the payment of Lovings' debt, whether or not due. Again, Lovings passed, to Ponderosa, the risk that insurance proceeds might thereby be unavailable for restoration purposes. The obligation of Ponderosa to restore the premises was absolute, whereas the obligation of Lovings to apply the insurance proceeds to the cost of such restoration was conditioned upon the Bank making such proceeds available. Ponderosa agreed to this limitation of obligation on the part of Lovings and will be held to the risk thereby incurred; hence, Lovings may not be required to pay for the restoration from their own funds.

That Ponderosa agreed, in effect, to the subordination of its interest in insurance proceeds to the interests of the Bank, however, does not dictate that Lovings are to have the windfall of having a substantial portion of their own debt paid at Ponderosa's expense. Nothing has transpired to entitle Lovings to damages or to require a forfeiture by Ponderosa. Both equity and public policy preclude the result of the holding of the Court of Appeals that Lovings were entitled to a windfall of approximately $149,500.00 from the insurance proceeds, at the expense of Ponderosa who was required to restore the improvements without the benefit of such funds.

■ Ponderosa's obligation with regard to providing insurance was to do so "in an amount equal to the replacement value."

This it did, and it could not have done more. Under Lovings' viewpoint, Ponderosa would have been required to provide insurance for their windfall as well as for the cost of restoration, which public policy will not permit. Judge Neal, in his dissent[1] to the majority opinion of that court, correctly noted that property insurance contracts are contracts of indemnity and that to the extent they anticipate a pecuniary benefit or advantage to be realized from the event insured against, they are void.

The Court of Appeals apparently viewed the controversy as one in which the insurance proceeds were inadequate to indemnify against the fire loss and one party or the other was required to make up the deficit. But it is not such a case. The shortfall was not occasioned by an inadequacy of insurance but rather by the preempting by the Bank of a substantial portion of these funds, and the loss suffered is not of the proceeds but only of their immediate availability. It is the financing arrangement that has been lost, and this is the loss that Ponderosa must bear.

Ponderosa has argued, alternatively, that if the Bank is allowed to divert the insurance proceeds, as we have held it may, it (Ponderosa) is entitled to a corresponding judgment against Lovings and an equitable lien against the premises to secure it. At first blush this may appear to be equitable, but it does not accommodate Lovings' entitlement to indemnity from the insurance or, alternatively, from Ponderosa. To give Ponderosa the judgment and lien sought would be but to thrust upon them a burden that the lease agreement clearly placed upon Ponderosa. How are the Lovings to pay such a judgment? Again, the thing missing is the financing arrangement.

That Ponderosa must bear the burden of the unavailability of the insurance funds does not, however, require that such burden be greater than necessary to secure the rights of the Lovings. As previously stated nothing has transpired to entitle Lovings to a bonus or to require a forfeiture by Ponderosa. It has performed its obligations. It provided the requisite insurance and restored the premises and is entitled to such equitable relief as may be available.

■ Closely akin to the doctrine of equitable liens is that of equitable subrogation, which is not founded upon contract but upon principles of equity and is applicable in every instance in which one party, not a mere volunteer, pays the debt of another which, in good conscience, should have been paid by the one primarily liable. *National Mutual Insurance Co. v. Maryland Casualty Co.* (1963), 136 Ind.App. 35, 41, 187 N.E.2d 575, 578, (*trans. den.*) and cases there cited.

"Subrogation has been characterized as an eminently just doctrine, a pure unmixed equity, one of the benevolences of the law, created, fostered, and enforced in the interest and for the pro-

---

1. "As a general rule property insurance creates a contract of indemnity. Hence, both the extent and the limits of recovery are found in the concept of making good the loss which the insured has sustained. A fire insurance policy does not entitle the insured to any more than indemnity for the actual loss sustained; it only places him in the same financial condition he would have been in if no fire had occurred. Couch on Insurance 2d § 54:4. *See Travelers Indemnity Co. v. Armstrong,* (1982) Ind., 442 N.E.2d 349; 45 C.J.S. *Insurance* § 915; *see also* 16 I.L.E. *Insurance* § 315. Recovery on several insurance policies covering the same interest in property is restricted to one recovery, the actual loss. Couch, *supra,* § 62:1. In order for an insurance policy to be valid, the insured must have an insurable interest in the property. Such an interest exists if the insured derives pecuniary benefit or advantage from the preservation or the continued existence of the property, or if the insured will sustain pecuniary loss by its destruction. *All Phase Construction Corporation v. Federated Mutual Insurance Company,* (1976) 168 Ind.App. 19, 340 N.E.2d 835; 44 C.J.S. *Insurance* 175(b); Appleman, Insurance Law and Practice § 2123. If there is no insurable interest, or if the property is doubly insured, the policy is in effect a gambling contract and is void as against public policy. Appleman, *supra,* § 2121. Gambling contracts are void for the reason that 'such policies have a tendency to create a desire for the event' insured against and furnish strong temptation to bring it about. 44 C.J.S. *Insurance* § 243."

Ind.App., 444 N.E.2d 896, 910.

motion of equity and justice, and to prevent injustice. Being founded on principles of natural reason and justice, it is a highly favored doctrine, which is to be given a liberal application, and which the courts are inclined to extend rather than to restrict. Perhaps no doctrine of equity jurisprudence is more beneficent in its operation, and perhaps none stands in higher favor."

73 Am.Jur.2d *Subrogation* § 7 (1974) (citations omitted).

Under this doctrine Lovings bear none of the burdens of the restoration and are in precisely the same position as they were before, while Ponderosa is subrogated to all of the rights of the Bank under its note and mortgage, save only as would be inconsistent with Lovings' rights under the lease. The application of the insurance proceeds has been limited to indemnification of the parties insured, and the burden to Ponderosa has been minimized. It will be reimbursed for its cost of restoration, albeit by deferred installments rather than by a lump sum. This burden either was or should have been within its contemplation when it entered into the agreements.

Other contentions need to be dispelled.

Ponderosa has contended that the Bank's claim of entitlement to the insurance proceeds conflicts with provisions of the Conditional Assignment of Rents and paragraphs 13(b), 15 and 18(c) of the lease; however, we see no such conflicts.

Lease paragraph 15 is a covenant for "quiet enjoyment" of the premises by Ponderosa, and paragraph 18(c) grants Ponderosa the right to cure Lovings' defaults, if any, upon its mortgage, to claim reimbursement for sums so expended and to withhold rents until such reimbursement is made. Lease provision 13(b) is an agreement by Ponderosa to subordinate its interest under the lease to Lovings' mortgage, conditioned upon the mortgagee's (Bank's) agreement to recognize the validity of the lease; and the Conditional Assignment of Rents expressly subordinated Ponderosa's lease rights to the Bank's mortgage rights upon the aforementioned condition.

The net effect of the above provisions was for Ponderosa to subordinate its interest under the lease to the interest of the Bank under the mortgage. So long as the mortgage was in effect, the Bank's rights were paramount. The "non-disturbance" provision or agreement for the Bank to recognize the lease could come into play only if the Bank became the owner of the premises by virtue of the mortgage. This it never did.

██ Ponderosa has also asserted that the Bank, by declaring the Lovings to be in default and instituting the foreclosure action, *had elected their remedy* and was, thereby, precluded from asserting a claim to the insurance proceeds. The Court of Appeals correctly held that there was no inconsistency in the Bank's action. The doctrine of election of remedies has application only where the remedies are inconsistent. *McKinnon v. Parrill* (1942), 111 Ind. App. 343, 351, 38 N.E.2d 1008, 1012. The assertion by the Bank of its right to foreclose in no way repudiates its right to demand payment from the insurance. Both the property pledged and the insurance constitute the Bank's security for the debt, and it could proceed against either or both. *Lutheran Brotherhood v. Hooten* (1970), Fla., 237 So.2d 23.

██ The Court of Appeals responded to Ponderosa's argument that it was entitled to an equitable lien, declaring that its hands were not clean, in that it had permitted liens to attach to the premises, contrary to the terms of the lease. Although it appears from the record that certain mechanic's lien notices had been filed of record, there is nothing from which it can be inferred that liens had, in fact, attached. That could occur only through judicial decree. The notices referred to are nothing more than advisements to third parties that the person filing has a claim which, if judicially determined to be well founded, will attach as a lien, retroactively.

We find no error. The ruling of the trial court correcting its prior grant of partial summary judgment and overruling the mo-

tion therefor of Lovings is affirmed. The cause is remanded to the trial court for further proceedings consistent with this opinion.

GIVAN, C.J., and PIVARNIK, J., concur.

DeBRULER, J., dissents with opinion.

HUNTER, J., not participating.

DeBRULER, Justice, dissenting.

I respectfully dissent. My thinking is in concert with that expressed by the First District Court of Appeals, and I therefore vote to deny transfer.

The partial summary judgment granted initially by the trial court divided the insurance proceeds into two parts, one part to be applied by the bank in full satisfaction of its note and mortgage, and the other part to be applied by Ponderosa to the cost of reconstruction. As I see it, the opinion of the Court of Appeals more closely conforms to the written lease and contract provisions involved in the case than does the majority opinion. Ponderosa expected to bear the cost of reconstruction. Ponderosa expected to receive reimbursement for the cost of reconstruction from a single source, i.e., insurance proceeds made available by the bank after its claims upon them were first satisfied. Under the partial summary judgment first awarded, Ponderosa received exactly what it bargained for. It is entitled to no more.