Scott N. KEITH, D.P.M.,
Appellant–Plaintiff,

v.

Mary MENDUS, D.O., Mark Rybczynski, D.O. and Richard Krejsa, D.O.,
Appellees–Defendants.

No. 45A05–9409–CV–357.

Court of Appeals of Indiana.

Feb. 12, 1996.

David E. Wickland, Munster, Stanley C. Fickle, Barnes & Thornburg, Indianapolis, for Appellant.

Robert F. Parker, Christine H. Curosh, Beckman, Kelly & Smith, Hammond, for Appellee.

## OPINION

RUCKER, Judge.

Plaintiff–Appellant Scott N. Keith (Doctor Keith) was terminated from his employment with Our Lady of Mercy Hospital and thereafter sued Defendants–Appellees Mary Mendus, Mark Rybczynski and Richard Krejsa (collectively referred to as Physicians) claiming tortious interference with a contractual relationship. Following a jury award of damages in Doctor Keith's favor, Physicians filed a motion to correct errors. The trial court granted the motion in part and ordered a new trial limited to the issue of damages. Doctor Keith now appeals claiming the trial court erred in granting the motion. Physicians cross appeal raising the following restated issues: 1) did the trial court err in limiting the grant of a new trial solely to the question of damages; 2) did the trial court err in failing to grant Physicians' motion for summary judgment and motions for judgment on the evidence; and 3) did the trial court err in refusing to give Physicians' proposed jury instruction.

We affirm.

Doctor Keith is a board-certified doctor of podiatric medicine practicing in Lake County, Indiana. On May 11, 1987 he entered into a written agreement with Our Lady of Mercy Hospital (Hospital) to provide podiatric services. The services were to be provided from two offices that Hospital owned and which were referred to as Family Medical Services. Under terms of the agreement Doctor Keith was employed by Hospital as an independent contractor and his employment was terminable at will by either party upon thirty days' prior written notice.

Physicians are doctors of osteopathic medicine specializing in family practice. Like Doctor Keith, Physicians also entered into written agreements with Hospital. However, their agreements provided that Physicians were Hospital employees rather than independent contractors. Doctor Keith and Physicians practiced medicine together at the Family Medical Services locations, but sometime in 1989 the relationship between the parties began to deteriorate. The reason for the deterioration is in dispute. According to Doctor Keith, Physicians desired to see his contract with the Hospital terminated because Doctor Keith refused to allow Physicians to serve as assistants on his podiatric surgeries. Physicians deny this allegation and instead maintain that in the latter months of 1989, Doctor Keith began canceling and then began failing to appear for scheduled appointments. In any event on November 30, 1989, Doctor Keith received a letter printed on Hospital letterhead purporting to terminate his contract with Hospital. The letter was signed by Physicians. Doctor Keith thereafter sought clarification of his status from Hospital administrator, J. Donald Manchak. A series of meetings and discussions ensued, after which Manchak issued a letter formally terminating Keith's agreement with Hospital effective February 3, 1990.

On January 6, 1992, Doctor Keith filed a complaint against Physicians for tortious interference with a contractual relationship. Thereafter Physicians filed a motion for summary judgment which the trial court denied. The case proceeded to trial by jury in March, 1994. After deliberation the jury returned a verdict in Doctor Keith's favor and assessed money damages of $400,000.00 against each of the three physicians for a total judgment of 1.2 million dollars. Physicians filed a timely Motion to Correct Errors seeking judgment on the evidence or in the alternative a new trial on the issue of liability as well as damages. Following a hearing, the trial court granted the motion in part by ordering a new trial limited solely to the issue of damages. This appeal ensued in due course.

## I.

Doctor Keith contends the trial court erred in ordering a new trial because it failed to set forth adequately special findings of fact as required by Ind.Trial Rule 59(J)(7).[1] Physicians counter that any deficiency in the trial

---

1. Trial Rule 59(J)(7) provides in relevant part:

 In reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence; and shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence, or if the court determines that the findings and judgment upon issues tried without a jury or with an advisory jury are against the weight of the evidence.
 In its order correcting error the court shall direct final judgment to be entered or shall correct the error without a new trial unless such relief is shown to be impracticable or unfair to any of the parties or is otherwise improper; and if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair. If corrective relief is granted, the court shall specify the general reasons therefor. When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. Such finding shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evidence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; if the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence.

court's entry of special findings is unimportant because their Motion to Correct Errors was premised jointly upon T.R. 59(J)(7) and T.R. 50(C).[2] Thus, the argument continues, assuming the trial court granted a new trial under T.R. 50(C) then no special findings were necessary.

 Trial Rule 59(J), which governs the relief to be granted on motions to correct error, requires a trial court to enter special findings when granting a new trial. *Anderson v. Amtech Capital Corp.* (1992), Ind.App., 600 N.E.2d 149, 150. On the other hand T.R. 50(C), which permits a trial court to grant a new trial in lieu of judgment on the evidence, requires no such findings. *Id.* When a trial court grants a new trial on the basis of a motion for judgment on the evidence pursuant to T.R. 50(C), it must consider only the evidence most favorable to the nonmoving party and may grant the motion only when there is no evidence or reasonable inferences therefrom to support an essential element of the claim. *Sipes v. Osmose Wood Preserving Co.* (1989), Ind., 546 N.E.2d 1223. However, when the trial court grants a new trial as a "thirteenth juror" under the provisions of T.R. 59(J), it must sift and weigh the evidence and judge witness credibility. *Berg v. Glinos* (1989), Ind.App., 538 N.E.2d 979, 981. "If Rule 50(C) new trial relief is granted, it cannot be on the basis of the '13th Juror' or a review of the evidence. If the trial court is going to 'weigh the evidence' then this kind of new trial must come as part of a motion to correct error under Trial Rule 59." 3 Harvey, *Indiana Practice* 299 (1988).

 In support of its decision to grant a new trial the trial court entered the following pertinent findings:

*With respect to the amount of damages awarded by the jury, the Court, sitting as the thirteenth (seventh) juror, determines there is a complete lack of evidence to support the award of $400,000.00 against each Defendant, for a total of $1.2 million dollars.* In late 1989 and/or early 1990, contemporaneously with the termination of the contract, Plaintiff began working about 20 hours a week in his restaurant in Whiting, Indiana, as a hobby, which continues through the date of this trial. This operation was losing both money and time that could have been better spent on his practice in order to mitigate any loss of prior income as alleged in Plaintiff's complaint. During the period 1990 to 1992, Plaintiff's restaurant reported losses totaling $91,000.00.

Plaintiff bases his claim for damages on the $11,500.00 gross income received for the last month of his contract in January of 1990, which this Court finds not to be reflective of what his regular monthly income would have been from the St. John clinic based on the prior two years. Moreover, the St. John clinic was closed in 1993 and no further income could have been realized from this location by Plaintiff thereafter.

The provision in Plaintiff's contract with the Hospital (which was not joined as a party in this proceeding), provided that the contract could be terminated by either party without cause on thirty (30) days notice. It is far too speculative to determine future income for a period of 25 years as was requested by the Plaintiff from the jury on such a contract. While Defendants have suggested the Court utilize the formula based on Plaintiff's prior earnings at the St. John clinic, until closed, and find that the sum of $211,761.00 was the maximum number that could be awarded by the jury, this Court declines to adopt their proposal, and determines that *the amount of award made by the jury is excessive and not warranted by the evidence.*

Record at 840–841 (emphases added). The trial court did not indicate whether it was granting a new trial under T.R. 50(C) or T.R. 59(J). The wording in the order that "there is a complete lack of evidence to support the award" and "the amount of award made by the jury is excessive and not warranted by the evidence" seems to suggest the trial

---

2. Trial Rule 50(C) provides:
 When a judgment on the evidence is sought before or after the jury is discharged, the court may grant a new trial as to part or all of the issues in lieu of a judgment on the evidence when entry of a judgment is impracticable or unfair to any of the parties or otherwise is improper, whether requested or not.

court was proceeding under the theory that there was no evidence or reasonable inferences therefrom to support an essential element of Doctor Keith's claim. Stated differently, at first blush it appears the trial court was proceeding under T.R. 50. However, the order specifically states that the trial court was "sitting as the thirteenth (seventh) juror." The trial court then began evaluating and weighing the evidence, a process contemplated by T.R. 59(J)(7). We conclude therefore that the trial court granted a new trial on the issue of damages under T.R. 59(J) rather than under T.R. 50(C) as Physicians contend. Thus, we agree with Doctor Keith that the trial court was required to set forth special findings of fact upon each material element of the damages issue. However, we do not agree the trial court also was required to relate supporting and opposing evidence on the issue.

When the trial court grants a new trial on the basis that the decision is "against the weight of the evidence", then T.R. 59(J)(7) requires the court's special findings of fact to "relate the supporting and opposing evidence to each issue upon which a new trial is granted." However, where the trial court grants a new trial on the basis that the decision of the jury is "clearly erroneous as contrary to or not supported by the evidence" then the findings need only "show why judgment was not entered upon the evidence." T.R. 59(J)(7); *Wedmore v. Jordan Motors, Inc.* (1992), Ind.App., 589 N.E.2d 1180, 1183, *trans. denied.* In this case, the trial court did not use the precise wording set forth in T.R. 59(J)(7). Nonetheless, the "complete lack of evidence" and "not warranted by the evidence" language in the trial court's order reflects the view that a new trial was granted because, in the opinion of the trial court, the jury's decision was clearly erroneous as either "contrary to [the evidence]" or "not supported by the evidence." In either event the trial court's findings were sufficient to satisfy the provisions of the Rule.

█ Doctor Keith counters that the trial court's order granting a new trial is nonetheless erroneous because there was no evidence introduced showing that he would not have

worked for the Hospital for an additional twenty-five years. Therefore, according to Doctor Keith, the trial court erred in declaring that it was too speculative to determine future income for that period of time.

█ The trial court's action in granting a new trial is given a strong presumption of correctness. *Lucero v. Lutheran Univ. Ass'n, Inc.* (1993), Ind.App., 621 N.E.2d 660, 662. If the trial judge believes that a contrary decision should have been reached by reasonable persons, then the judge should grant a new trial. *Huff v. Travelers Indem. Co.* (1977), 266 Ind. 414, 363 N.E.2d 985; *Brown v. Conrad* (1988), Ind.App., 531 N.E.2d 1190, 1192, *trans. denied.* We reverse only for an abuse of discretion. *Id.*

In support of his claim for damages Doctor Keith introduced evidence showing that he earned from Hospital $41,509.75 and $50,220.00 respectively in 1988 and 1989, the two years immediately before Hospital terminated his contract. In closing argument Doctor Keith invited the jury to take the intermediate amount of $48,000.00 and multiply it by the twenty-five years he expected to remain in the practice of medicine, for a total of 1.2 million dollars. The jury accepted the invitation and awarded damages accordingly.

█ Although the terms of Doctor Keith's employment with Hospital were reduced to writing, Doctor Keith was nonetheless an employee-at-will. The contract itself so provided. Thus any damages to which Doctor Keith is entitled on his claim of interference with a contractual relationship must be based on principles of tort rather than contract. In that regard this case represents the first time we have had occasion to determine the proper measure of damages for the tortious interference with a contractual relationship of an at-will employee. However a recent decision by this court is instructive. In *Remington Freight Lines, Inc. v. Larkey* (1994), Ind.App., 644 N.E.2d 931, we addressed for the first time the correct measure of damages for the retaliatory discharge of an at-will employee. Upholding an award for damages based upon approximately three years of future employment, we held:

In assessing the damages due an at-will employee who is wrongfully discharged ... those damages must reflect compensation for the tort—the retaliatory discharge itself. Once the jury determines that the employee has been discharged wrongfully, his status as employee at will is a nullity for the purpose of determining damages. *Id.* at 941. We also held that once the employee has proven his discharge was retaliatory, damages must be assessed based upon a presumption of prospective employment. *Id.* Although it would have been within the employer's prerogative to discharge the employee at any time, "[w]e will not assume that, had the retaliatory discharge not occurred, that the employer would have fired the employee for some other reason." *Id.* at 941–42. We thus concluded that the jury award of damages properly included the difference between what the plaintiff's earnings would have been had he continued in defendant's employ, and his actual earnings. *Id.*

 As far as an award of damages based on future employment is concerned, we see no substantive difference between the measure of damages applied to cases involving the retaliatory discharge of an at-will employee and the measure of damages which should be applied to cases involving the tortious interference of a contract of an at-will employee. In both instances the tort itself is compensable, and the plaintiff's status as an at-will employee is not relevant for the purpose of determining damages. Rather, future employment is presumed. However, as with the case of the retaliatory discharge of an at-will employee, the fiction of prospective employment we use to gauge losses incurred by an at-will employee whose contract has been wrongfully interfered with "may not stretch on *ad infinitum*. Instead, we leave to the jury the task of determining what amount of time is a 'reasonable time'." *Larkey,* 644 N.E.2d at 942. In *Larkey* the jury assessed compensatory damages reflecting the amount of income the fired worker would have received had he remained employed for three years and nine months beyond termination. We determined that such time was well within the parameters of a "reasonable" time and thus the verdict fell soundly within the realm of the jury's discretion. *Id.* Further, the record revealed that the worker's damages were supported by evidence of his earnings before and after termination, and were therefore not based upon mere speculation or conjecture. *Id.; See also Haas Carriage, Inc. v. Berna* (1995), Ind.App., 651 N.E.2d 284 (Three years and ten weeks considered a "reasonable time" on which to base an at-will employee's future wage loss where evidence showed that prior to discharge worker had an eighteen-year employment history with company along with a favorable employment record).

Here the record shows Doctor Keith had been employed by Hospital for a little over two-and-a-half years when his contract was terminated in February, 1990. In 1988 Doctor Keith earned $41,509.75 from fees received under his contract with Hospital and in 1989 he earned $50,220.00 from that source. The evidence of Doctor Keith's actual earnings from the date his contract was terminated until the date of trial is unclear.[3] However as we have indicated Doctor Keith was entitled to receive the difference between his actual earnings and what his earnings would have been had his employment continued with Hospital. *See Larkey,* 644 N.E.2d at 942. In this case, Doctor Keith argued to the jury, and contends before this court, that but for Physicians' interference, he would have earned $48,000.00 a year in

3. Evidence Doctor Keith introduced at trial showed he was the sole shareholder of a professional medical corporation existing under the name of Associated Foot Specialists, Inc. (AFSI), and that fees Doctor Keith received under his contract with Hospital were put into the corporation. In 1988 the gross income for AFSI was $227,548.00 of which approximately $41,500.00 was attributable to Doctor Keith's contract with Hospital. In 1989 the gross income for AFSI was $224,261.00 of which $50,220.00 was attrib-

utable to Doctor Keith's contract with Hospital. For the year ending 1990, the gross income for AFSI totaled $126,202.00 of which $11,500.00 was attributable to approximately two months of income Doctor Keith received under his contract with Hospital. In 1991 and 1992, the two years after Doctor Keith's contract with Hospital was terminated, AFSI reported gross income of $104,002.00, and $41,798.00 respectively. There was no evidence of record showing Doctor Keith's earnings from 1993 to the date of trial.

fees from his employment with Hospital, and the employment would have continued for twenty-five years.

For the sake of argument only we assume that the $48,000.00 figure was within the evidence presented at trial. However, we conclude that upon the record before us twenty-five years is not a reasonable time upon which to base future prospective employment. Although the jury has the responsibility of determining a "reasonable time", the "presumed 'prospective employment' of the discharged at-will employee is not infinite." *Haas,* 651 N.E.2d at 290 citing *Larkey,* 644 N.E.2d 931. In this case, other than Doctor Keith's argument that he was entitled to damages for the length of time he expected to remain in the practice of podiatric medicine, there was nothing before the jury to support an award of damages based on twenty-five years of future employment with Hospital. Unlike the employer in *Haas,* for example, here Doctor Keith's employment with Hospital was relatively brief, only a little more than two-and-a-half years. Also, there is nothing in the record showing that Doctor Keith enjoyed a favorable employment record while employed by Hospital. Although it is not within this court's prerogative to state definitively how many years of prospective employment is reasonable, we do conclude that twenty-five years is not reasonable. The trial court did not err in granting a new trial on the basis that the 1.2 million dollar damage award was either contrary to or not supported by the evidence.

## II.

■ On cross-appeal Physicians first contend the trial court erred in failing to grant their request for a new trial on the issue of liability. According to Physicians, because the jury's award of damages could only have been the result of jury passion and prejudice, the jury's finding of liability was necessarily tainted as well. In support of their claim Physicians cite the evidence presented at trial and assert "[t]he Doctors presented substantial testimony indicating that they did not interfere with Keith's contractual relationship with [the Hospital]." *Brief of Cross–Appellants* at 21.

■ When a trial court declines to intervene and refuses to set aside a jury verdict, we will not reverse unless the verdict is wholly unwarranted under the law and the evidence. *Ingersoll–Rand Corp. v. Scott* (1990), Ind.App., 557 N.E.2d 679, 684, *trans. denied.* Here, in declining to grant a new trial on the issue of liability, the trial court reasoned that liability had been "hotly contested by Defendants from the start of this case," and that "there was sufficient evidence to allow the jury to find that Defendants had interfered with Plaintiff's contract." *Record* at 839, 840. We agree. Physicians' contentions to the contrary amount to an invitation for this court to reweigh the evidence, which we decline to do. The trial court was well within its discretion in denying a new trial on the issue of liability. We find no error.

## III.

■ Physicians next contend the trial court erred in denying their Motion for Summary Judgment and Motions for Judgment on the Evidence.[4] Doctor Keith counters that a party may not obtain appellate review of the denial of a motion for summary judgment following a trial on the merits. In support he cites numerous federal decisions which have considered this issue and have largely disfavored appellate review of a trial court's denial of summary judgment following a trial on the merits. *See, e.g., Watson v. Amedco Steel, Inc.,* 29 F.3d 274, 277–78 (7th Cir.1994); *Johnson Intern. Co. v. Jackson Nat. Life Ins. Co.,* 19 F.3d 431, 434 (8th Cir.1994); *Locricchio v. Legal Servs. Corp.,* 833 F.2d 1352, 1358–59 (9th Cir.1987). It is true the courts of this state often refer to federal cases when examining procedural rules. Many of the Indiana rules of civil procedure are essentially the same as federal civil rules and thus it is appropriate in some instances to consider federal authorities as guidelines for proper application of specific Indiana rules. "However, although respect-

---

4. Physicians filed three Motions for Judgment on the Evidence: the first was filed following the presentation of Doctor Keith's case, the second was filed at the close of all the evidence, and the third was contained in Physicians' Motion to Correct Errors following the jury's verdict.

ful of the federal courts' interpretation of federal rules of procedure we are not thereby bound when applying this State's rules." *Rickels v. Herr* (1994), Ind.App., 638 N.E.2d 1280, 1283. That is particularly the case where, as here, our courts of review have routinely permitted appeals from the denial of summary judgment following entry of a final judgment or order.

 As a general rule, an order denying summary judgment is not a final appealable judgment. *Loving v. Ponderosa Systems, Inc.* (1985), Ind., 479 N.E.2d 531, 534; *Pitts v. Wooldridge* (1974), 161 Ind.App. 404, 315 N.E.2d 736. Such a denial does not irretrievably dispose of one or more issues between the parties; neither does it determine nor foreclose the rights of the parties. *Loving*, 479 N.E.2d at 534; *see Albright v. Pyle* (1994), Ind.App., 634 N.E.2d 69, 70. Rather, the denial of a motion for summary judgment merely places the parties' rights in abeyance pending ultimate determination by the trier of fact. *Haskell v. Peterson Pontiac GMC Trucks* (1993), Ind.App., 609 N.E.2d 1160, 1163, *reh'g. denied; see Pitts*, 315 N.E.2d at 738. Thus a party who seeks review of denial of a motion for summary judgment must do so ordinarily by way of interlocutory appeal in accordance with Ind.Appellate Rule 4(B)(6). *Loving*, 479 N.E.2d at 534. However once final judgment has been entered following trial, the ultimate determination of the trier of fact upon the merits of the claim has taken place, and the interlocutory nature of the denial of summary judgment terminates. As a result, a party who fails to bring an interlocutory appeal from the denial of a motion for summary judgment may nevertheless pursue appellate review after the entry of final judgment. In accordance with this approach, this court has long addressed appeals from denials of motions for summary judgment following entry of a final judgment or order. *See, e.g., United Services Auto. Ass'n. v. Caplin* (1995), Ind.App., 656 N.E.2d 1159, *reh'g. denied; Gehlbach v. Hawkins* (1995), Ind.App., 654 N.E.2d 877; *Haimbaugh Landscaping, Inc. v. Jegen* (1995), Ind.App., 653 N.E.2d 95, *reh'g. denied; Figg v. Bryan Rental, Inc.* (1995), Ind.App., 646 N.E.2d 69, *trans. denied; Hacienda Mexican Rest. v. Hacienda* (1994), Ind.App., 641 N.E.2d 1036; *Continental Basketball Ass'n., Inc. v. Ellenstein Enters.* (1994), Ind.App., 640 N.E.2d 705, *reh'g denied; Lutheran Hosp. of Fort Wayne v. Doe* (1994), Ind.App., 639 N.E.2d 687, 689 n. 5, *trans. denied; Morris v. G. Rassel, Inc.* (1991), Ind.App., 576 N.E.2d 596; *Shadeland Development Corp. v. Meek* (1986), Ind.App., 489 N.E.2d 1192, *trans. denied; State v. Totty* (1981), Ind.App., 423 N.E.2d 637, *trans. denied; Manning v. Allgood* (1980), Ind.App., 412 N.E.2d 811. Accordingly, we conclude that the denial of a motion for summary judgment is reviewable on appeal following a final judgment entered after trial on the merits.

 Physicians assert the trial court erred in denying their motions because the designated materials and evidence presented at trial demonstrate they are immune from liability for tortious interference with a contractual relationship.

 On appeal from the denial of a motion for summary judgment, we apply the same standard applicable in the trial court. *NIPSCO v. Sell* (1992), Ind.App., 597 N.E.2d 329, *trans. denied.* We must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Shuamber v. Henderson* (1991), Ind., 579 N.E.2d 452. Any doubt as to a fact, or an inference to be drawn, is resolved in favor of the non-moving party. *Malachowski v. Bank One, Indianapolis,* (1992), Ind., 590 N.E.2d 559, 562. Even if the trial court believes that the non-moving party will be unsuccessful at trial, summary judgment should not be entered where material facts conflict or where conflicting inferences are possible. *State Street Duffy's, Inc. v. Loyd* (1993), Ind.App., 623 N.E.2d 1099, 1101, *trans. denied.* In like fashion we use the same standard of review as the trial court in determining the propriety of judgment on the evidence. When the trial court considers a motion for judgment on the evidence, it must view the evidence in a light most favorable to the non-moving party. *Liberty Mut. Ins. Co. v. Blakesley* (1991), Ind.App., 568 N.E.2d 1052, 1057. Judgment may be entered only if there is no

substantial evidence or reasonable inference to be drawn therefrom to support an essential element of the claim. *Id.*

An action for tortious interference with a contractual relationship is comprised of the following elements: 1) existence of a valid and enforceable contract, 2) defendant's knowledge of the contract's existence, 3) defendant's intentional inducement of breach of contract, 4) the absence of justification, and 5) damages resulting from defendant's wrongful inducement of breach. *Winkler v. V.G. Reed & Sons, Inc.* (1994), Ind., 638 N.E.2d 1228, 1235. However, such an action involves the intervention of a third party and will not lie against a party to the contract. *Martin v. Platt* (1979), 179 Ind. App. 688, 386 N.E.2d 1026, 1027. Further, an officer or director of a corporation will not be held independently personally liable for inducing the corporation's breach of its contract, if the officer or director's action is within the scope of his official duties on behalf of the corporation. *Id.; Biberstine v. New York Blower Co.* (1993), Ind.App., 625 N.E.2d 1308, 1318, *joint dismissal of trans. granted.*

Physicians argue the undisputed evidence reveals that they were Hospital employees acting within the scope of their employment. Thus, the argument continues, because of their employment status their conduct may not be construed as tortious interference as a matter of law.[5] We disagree with Physicians' view of the evidence. In support of their claim that they were Hospital employees acting within the scope of their employment, Physicians designated various T.R. 56 materials including their respective employ-

ment agreements with the Hospital. Physicians point to the portions of those agreements which require Physicians' involvement in the delivery of coordinated health care services and claim they were under a duty to inform the Hospital regarding Doctor Keith's work performance. Thus, the argument continues, Physicians' actions in complaining to Hospital administrator Manchak that Doctor Keith was failing to keep various appointments were clearly within the scope of their employment. Doctor Keith countered that disputed issues of material fact exist concerning the events that surrounded his termination and whether Physicians' actions in seeking to terminate his contract with the Hospital were within the scope of their duties as Hospital employees. Doctor Keith designated among other things his own affidavit in which he contends that neither his work performance nor attendance for patient appointments were deficient. At trial Doctor Keith testified that Physicians frequently made clear to him that they wanted to assist on his surgical cases, that Physicians sought to have Doctor Keith terminated for his refusal to do so, and that administrator Manchak informed him in several conversations that his contract was terminated because of this refusal.

Physicians objected to the foregoing designations and testimony as inadmissible hearsay and maintain they were improperly considered by the trial court both during summary judgment proceedings and during trial. On appeal the parties devote considerable time debating the admissibility of Doctor Keith's affidavit as well as other allegedly hearsay statements. However, we need not determine the admissibility of these state-

---

5. Physicians cite a number of cases from foreign jurisdictions for the general proposition that a defendant's employees acting within the scope of their employment are identified with the defendant itself so that they may ordinarily advise the defendant to breach its contract without the employees incurring liability in tort. *Accord, Prosser and Keeton on the Law of Torts*, § 129 (5th Ed.1984). We have not addressed this specific proposition. Rather our discussions have been limited to instances involving corporate officers and directors, *Biberstine v. New York Blower Co.* (1993), Ind.App., 625 N.E.2d 1308; supervisors, *Martin v. Platt* (1979), 179 Ind.App. 688, 386 N.E.2d 1026; and university trustees, *Kiyose v. Trustees of Indiana Univ.* (1975), 166 Ind.App.

34, 333 N.E.2d 886. *See also Leslie v. St. Vincent New Hope, Inc.*, 873 F.Supp. 1250 (S.D.Ind.1995) involving a discharged employee's complaint against her immediate supervisor. In any case we need not address today whether a non-supervisory employee acting within the scope of his employment is immune from tort liability for interfering with another employee's contractual relationship. First, Physicians' argument fails even assuming we adopt the law expressed in cases from foreign jurisdictions. Second, the trial court read a jury instruction expressing the foregoing proposition and except for grounds raised by Physicians, and discussed in Section IV of this opinion, neither party objected to the instruction.

ments because sufficient other evidence establishes an issue of material fact. The designated T.R. 56 materials and trial evidence include the letter dated November 30, 1989, from Physicians to Doctor Keith purportedly terminating his employment with the Hospital. Doctor Keith points out and Physicians concede that Physicians were without authority to terminate Doctor Keith's contract with the Hospital. Thus, at least one action by Physicians gives rise to a conflicting inference regarding whether Physicians acted within the scope of their employment in seeking to terminate Doctor Keith's employment with the Hospital. Further, contrary to Physicians' assertion that they sought Doctor Keith's termination only because of his failure to keep patient appointments, Physicians claimed in their letter to Doctor Keith that "we fail to comprehend your inconsideration in bringing in a second podiatrist to assist on your surgical cases in which we not only referred the patient to you, but also acted as admitting physician." *Record* at 924. In summary judgment actions the contents of all pleadings, affidavits, and testimony are liberally construed in the light most favorable to the non-moving party. *ITT Commercial Finance Corp. v. Union Bank & Trust Co.* (1988), Ind.App., 528 N.E.2d 1149. Here we agree with Doctor Keith that the acts and representations of the parties give rise to conflicting inferences regarding the events surrounding Doctor Keith's termination and whether Physicians acted within the scope of their employment. These conflicting inferences were properly resolved by the trier of fact and summary disposition was therefore inappropriate. Accordingly, the trial court did not err in denying Physicians' motion for summary judgment and motions for judgment on the evidence.

## IV.

 Physicians last contend the trial court erred in failing to tender Physicians' Proposed Jury Instruction No. 2. The trial court read the following final instruction to the jury:

> If you find, from a consideration of all the evidence, that the defendants, or any of them, were employees of Our Lady of Mercy Hospital, and that at the time the

alleged tortious acts occurred, they were acting within the scope of their employment, then you *may* find for the defendants, or for those defendants as to which you so find, since employees of a party to a contract are not liable for tortious interference with a contract so long as their actions were within the scope of their employment.

(emphasis added). *Record* at 1701–02. This instruction was a modification of the proposed instruction tendered by Physicians, which contained the phrase "then you *must* find for the defendants." (emphasis added). *Record* at 513. According to Physicians the trial court erred in substituting the word "may" for the word "must" because in so doing the trial court transformed the instruction from mandatory to permissive and thus "the trial court allowed the jury to find as a fact that the Doctors were [Hospital] employees acting within the scope of their employment at the time of the alleged tortious acts, and still return a verdict for Keith." *Brief of Cross–Appellants* at 49.

 Mandatory instructions are ones which attempt to set up a factual situation directing the jury to a certain result. *Brokers, Inc. v. White* (1987), Ind.App., 513 N.E.2d 200, 204; *Perry v. Goss* (1970), 253 Ind. 603, 255 N.E.2d 923, 925. Mandatory instructions are disfavored in the law, *Kellogg v. City of Gary* (1990), Ind., 562 N.E.2d 685, 713, and our courts have repeatedly cautioned trial judges about the dangers of giving instructions which are mandatory in form. *Montgomery Ward & Co. v. Gregg* (1990), Ind.App., 554 N.E.2d 1145, 1165, *trans. denied.* Thus, it is well within a trial court's discretion to refuse a tendered instruction when it can be framed to cover the principle of law without mandatory language. *Id.* Moreover, where, as here, a trial court tenders numerous final instructions, the jury is unlikely to be misled by a one-word nuance. As our supreme court has previously observed,

> Instructing a jury is a most difficult and complex process. It is generally conceded that there has been an overemphasis placed upon the wording and refined meaning of instructions which far exceed

their actual effect upon the jury. When an instruction has to be read and reread by a legally trained mind to catch a slight variation or error in its meaning, it is difficult to believe that a jury of laymen could have been misled.

*Hendrix v. Harbelis* (1967), 248 Ind. 619, 230 N.E.2d 315, 319. Accordingly, the trial court was well within its discretion in modifying Physicians' proposed jury instruction. We find no error here.

Judgment affirmed.

NAJAM, J., concurs.

BARTEAU, J., dissents with opinion.

BARTEAU, Judge, dissenting.

I agree with the majority that the length of employment we use to gauge losses incurred by an at-will employee whose contract has been wrongfully interfered with may not stretch on *ad infinitum*. As the majority notes, "we leave to the jury the task of determining what amount of time is a 'reasonable time.'" Slip op. at 11 (citing *Remington Freight Lines, Inc. v. Larkey*, 644 N.E.2d 931, 942 (Ind.Ct.App.1994)).

Tort damages, such as those assessed in cases of retaliatory discharge and, now, tortious interference with an employment contract, are within the province of the jury, and they will not be overturned absent an abuse of discretion. *Larkey*, 644 N.E.2d at 942; *Stivers v. Stevens*, 581 N.E.2d 1253 (Ind.Ct. App.1991), *reh'g denied*; *Kavanagh v. Butorac*, 140 Ind.App. 139, 221 N.E.2d 824 (1966). An abuse of discretion occurs when the award of damages is not supported by the facts and circumstances before the court. *See Hunsberger v. Hunsberger*, 653 N.E.2d 118, 121–22 (Ind.Ct.App.1995), *reh'g denied*.

Dr. Keith testified that, at the time his contract was terminated, he was 40 years old and that he expected to work until he reached the age 65. The hospital argued that Family Medical Services closed in January, 1993, rendering Dr. Keith's employment beyond that time impossible. However, Dr. Keith asserted that Family Medical Services merely relocated, and that his employment would have endured had his employment relationship with the hospital not been tortiously severed.

Despite this conflicting testimony, the majority concludes:

> [T]hat upon the record before us twenty-five years is not a reasonable time upon which to base future prospective employment. While the jury has the responsibility of determining a "reasonable time", the "presumed 'prospective employment' of the discharged at-will employee is not infinite."

Slip op. at 12 (citing *Haas Carriage, Inc. v. Berna*, 651 N.E.2d 284, 290 (Ind.Ct.App. 1995)). Clearly, twenty-five years is not an infinite length of time, and the jury's award is not against the logic and effect of the facts and circumstances before the court. Dr. Keith offered into evidence his proposed computation of the length of his employment, and the hospital rebutted this proposal with an opposing estimate. We have held that the testimony of a discharged employee is sufficient to allow the jury to ascertain the amount of damages to be awarded. *Stivers*, 581 N.E.2d at 1255. It was completely within the province of the jury to accept or reject either or both of the parties's computations.

What is necessary is that the jury's measure of damages fall within the parameters of a "reasonable" time period. *Larkey*, 644 N.E.2d at 942. For example, a measure awarding Dr. Keith damages for lost employment over a thirty-year period would defy the logic and effect of the facts before the court because no evidence was presented that Dr. Keith would continue to practice medicine until the age of 70. However, the jury found reasonable Dr. Keith's expectation of practicing medicine for twenty-five years until he retires at age 65, and this was within the parameters of a reasonable time period and supported by the evidence.

Such is not to say that in all cases of tortious interference with an at-will employment contract the injured party is entitled to receive compensation measured from the tortious act through the time the party expects to retire. The jury must determine the length of time the injured party would have remained employed but for the tortious act. In this case, the jury rejected the hospital's position and accepted Dr. Keith's claim that

he would have remained employed with the hospital for twenty-five years.

I respectfully DISSENT.